IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00847-WJM-MJW

HEATHER LUCIER,

Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC., and
MIDLAND FUNDING, LLC,

Defendants.

---

## REPORT AND RECOMMENDATION
### on
### DEFENDANTS MIDLAND CREDIT MANAGEMENT, INC. AND MIDLAND FUNDING LLC'S MOTION TO ENFORCE SETTLEMENT AGREEMENT
### (Docket No. 21)

---

**Michael J. Watanabe**
**United States Magistrate Judge**

Now before the Court is Defendants' Motion to Enforce Settlement Agreement

(Docket No. 21).  Because the Motion would dispose of this lawsuit if granted, the Court

treats it as dispositive for purpose of 28 U.S.C. § 636(b).

The Motion was referred to the undersigned by Judge William J. Martinez on

August 14, 2014 (Docket No. 23).  Plaintiff filed a Response on September 2, 2014

(Docket No. 27); Defendants filed a Reply on September 16, 2014 (Docket No. 28);

Plaintiff filed a Surreply on September 23, 2014 (Docket No. 29).[1]  At the September 30,

2014, hearing, the parties presented testimony from two witnesses: Defendants called

---

[1] Judge Martinez struck that Surreply for failing to conform to his practice standards (Docket No. 30), but because both parties referred to the Surreply's contents and exhibits during the evidentiary hearing held on September 30, 2014, the Court has taken judicial notice of the document.

2

Plaintiff's former attorney Matthew Osborne as a witness, and Plaintiff called herself as a witness (Docket No. 31).  The Court has carefully reviewed these materials, considered the testimony and credibility of the witnesses, taken judicial notice of the court's file, and considered the applicable Federal Rules of Civil Procedure and case law.  The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## Findings of Fact

Plaintiff suffers from a severe depressive disorder.  Around July 3 or July 4, 2014, her psychiatrist changed her medications.  The change led to a deterioration in Plaintiff's condition, and she was involuntarily committed to a psychiatric hospital on or about July 11, 2014.  She was released on or about July 21, 2014.

These events occurred during the same weeks that Plaintiff's then-attorney, Matthew Osborne, was negotiating a settlement of this case with Defendants' counsel, Joseph Lico.  On July 7, 2014, Plaintiff authorized Osborne to make a settlement offer as follows:

> We can make a counter offer of $5,000, plus [Defendants] agree to waive the outstanding debt and erase all the credit reporting they have done.

(Docket No. 29-1, p.1).  Osborne and Lico agreed upon those terms, with one variation: that Defendants would *request* that the major credit bureaus delete the relevant debt entries, but would not (and could not) guarantee *actual* deletion or erasure (*see* Dockets No. 21-1, 21-2, 21-3).  Lico clarified his understanding of this point with Osborne (*id.*), but there is no evidence suggesting that Osborne discussed the distinction with his

client, and the Court finds that Osborne did not do so.  On July 10, 2014, Lico provided a draft written settlement agreement to Osborne, who forwarded it to Plaintiff after a cursory review (*see* Docket No. 21-4; Docket No. 27, p.6; Docket No. 29-1, pp. 2–6). While in the hospital, on July 15, 2014, Plaintiff caused an e-mail to be sent from her account to Osborne, expressing discomfort with the agreement (Docket No. 27, p. 7).

On July 24, 2014—following Plaintiff's release from the hospital—Osborne and Plaintiff spoke on the phone for about an hour.  Osborne explained the terms in the written settlement agreement to Plaintiff, and Plaintiff explained her objections to Osborne.  Later that day, acting through Osborne, Plaintiff formally repudiated the settlement agreement (Docket No. 21-6).  The following week, Osborne moved to withdraw from representing Plaintiff in this matter—correctly anticipating that he would become a witness on Defendants' motion to enforce the settlement agreement (Docket No. 17; *see also* Docket Nos. 22, 24).

Plaintiff repudiated the agreement for two reasons.  First, she insisted that the agreement include *actual* deletion of the negative information on her credit reports, rather than Defendants' *request* for such deletion.  This term was important to Plaintiff, because she had been seeking a loan to refinance her house and had been unsuccessful due at least in part to the negative credit information at issue in this suit. Second, she misunderstood the scope of the confidentiality clause contained in the written release.  She understood the clause, incorrectly, to prohibit her from discussing the merits of the case and from informing other potential plaintiffs of how to seek similar

relief.  She believed she should receive $20,000 if the settlement included such a broad confidentiality provision, instead of the $5,000 previously agreed upon.

## Legal Analysis

A district court has broad discretion to summarily enforce a settlement agreement.  *United States v. Hardage*, 982 F.2d 1491, 1496–97 (10th Cir. 1993).  In doing so, an evidentiary hearing must be held to resolve disputes of fact as to the terms or existence of the agreement.  *Id.*  The usual principles of contract law apply.  *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993).

Assuming a contract was formed between the parties' attorneys, the principles of agency law become relevant.  The "apparent authority" principles of agency law do not apply: the counterparty cannot rely on the disputing party's attorney's representation of authority to bind the client.  *Radosevich v. Pegues*, 292 P.2d 741, 743 (Colo. 1956); *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966).  However, as to the disputing parties' attorney authority to settle, the "implied authority" principles apply.  *See Siener v. Zeff*, 194 P.3d 467, 471 (citing *Radosevich v. Pegues* for principle of "express or implied authority") (Colo. App. 2008); *Cross v. First Judicial Dist. Ct.*, 643 P.2d 39, 41 (Colo. 1982) (citing ALR for same principle); *see also Turner v. Burlington Northern R.*, 771 F.2d 341, 345 (8th Cir. 1985) ("The rules for determining whether authority has been given by the client are the same as those which govern other principal-agent relationships.  Authority to do an act can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him or her to act in a particular manner on the

principal's account.  Agency is a legal concept which depends on the manifest conduct

of the parties, not on their intentions or beliefs as to what they have done.").

The Court concludes that no valid contract was formed, for two reasons.  First,

only the mentally competent can form an enforceable contract.  In Colorado:

> Every person is presumed by the law to be sane and competent for the purpose of entering into a contract.  A party can be insane for some purposes and still have the capacity to contract.
>
> A person is incompetent to contract when the subject matter of the contract is so connected with an insane delusion as to render the afflicted party incapable of understanding the nature and effect of the agreement or of acting rationally in the transaction.  Therefore, under this rule, it follows that emotional distress or severe mental depression generally is insufficient to negate the capacity to contract.
>
> Moreover, a contract may not be voided when, as here, the alleged incompetence arose after the execution of the contract.  Competency to contract is determined by a party's mental state at the time of execution of the agreement.

*Forman v. Brown*, 944 P.2d 559, 562 (Colo. App. 1996).  A change in Plaintiff's

medication on July 3rd or 4th caused such a severe deterioration in Plaintiff's mental

condition (e.g., she began forming suicidal ideations) that she was involuntarily

committed as a result. This deterioration predates her communications with Osborne

authorizing a settlement.  Having taken testimony from Plaintiff, it is clear to the Court

that she did not understand the nature and effect of the settlement agreement.

Accordingly, the Court holds that on July 7, 2014, Plaintiff lacked the capacity to

contract.  The Court further holds that Plaintiff's incapacity terminated Osborne's

authority to contract on her behalf, whether express or implied.  *See* 12 *Williston on*

*Contracts* § 35:31 (4th ed., 2014 supp.); 2A C.J.S. Agency § 136 (2014); *Restatement*

6

*(Second) of Agency* § 122 (1958). *But see Restatement (Third) of Agency* § 3.08 (2006) (abandoning the rule in the Second Restatement and holding that agent's implied authority terminates only when agent has notice of principal's loss of capacity).

Second, a contract is formed only by agreement to the "essential terms" thereof. *Roaring Fork Land & Cattle Co. v. O'Brien*, 476 P.2d 276, 278 (Colo. App. 1970) (contract formed despite "omission of details, which were not intended by the parties as being conditions precedent to the formation of a contract"). Here, Plaintiff had difficulty securing a refinancing loan because of Defendants' credit reporting. Her difficulty in refinancing was one of Plaintiff's reasons for pursuing this litigation. The *actual* deletion of Defendants' credit reporting was significant enough that it was one of only three terms expressly affirmed by Plaintiff (Docket No. 29-1, p.1). The change from actual deletion (as authorized by Plaintiff, Docket No. 29-1, p.1) to request for deletion (as offered by Osborne, Docket No. 21-1) was a change to a term that was essential to her. Although Defendants lack the ability, in fact, to guarantee actual deletion, that limitation was not known to Plaintiff at the time of the purported contract; there was thus no meeting of the minds on this essential term. In order to settle the claim, Osborne would have had to explain Defendants' limitation to Plaintiff and secure Plaintiff's authorization for this essential term under that limitation. Osborne did not do so, and the terms he offered did not accurately reflect the essential terms as Plaintiff authorized them. Finally, because Osborne was aware of Plaintiff's difficulty in securing a refinancing loan and because he changed the nature of this term without discussing the change with Plaintiff, he had no implied authority to offer the altered term.

7

WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED that defendants' Motion to Enforce Settlement Agreement

(Docket No. 21) be DENIED;

ORDERED that a Scheduling Conference is set for November 6, 2014, at 10:30

a.m. before the undersigned; and

ORDERED that the parties shall submit an proposed amended scheduling order

by October 31, 2014.  The parties shall meet and confer to prepare the proposed

amended scheduling order.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  October 2, 2014                          s/ Michael J. Watanabe
       Denver, Colorado                     Michael J. Watanabe
                                       United States Magistrate Judge